THE FIRST NATIONAL BANK OF LA FERIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43757.     Filed June 20, 1955.

*J. C. Looney, Esq.*, for the petitioner.
*John P. Higgins, Esq.*, for the respondent.

OPINION.

LeMire, *Judge:* The question presented is whether petitioner, a national banking corporation, must use its own experience in determining additions to its reserve for bad debts for 1947 and 1948, or whether it is entitled to use the experience of other banks in the locality having loans comparable in their nature and risk involved to those outstanding on petitioner's books at the close of each of the taxable years involved.

Petitioner contends that it is entitled to use the bad debt experience of another bank, the First National Bank of Mercedes, instead of its own experience in determining reasonable charges to its bad debt reserve because of a change in its management resulting in a more liberal loan policy and expectation of larger loss ratios in the future.

Section 23 (k) (1) of the Internal Revenue Code of 1939 provides for the deduction from gross income of debts which become worthless during the taxable year, or (in the discretion of the Commissioner) of a reasonable addition to a reserve for bad debts. In accordance with section 23 (k), respondent issued a ruling on December 8, 1947, Mim. 6209, *supra*, authorizing commercial banks on a specific charge-off basis to change to the reserve basis, providing an election was made by March 15, 1948. In allowing this election, the respondent required that a formula based upon a 20-year "moving average experience factor" should be used to determine the proper charge to the bad debt reserve for a given taxable year. Respondent's ruling provided further, in pertinent part, as follows:

4. In computing the moving average percentage of actual bad debt losses to loans, the average should be computed on loans comparable in their nature and risk involved to those outstanding at the close of the current taxable year involved. * * *

5. A newly organized bank or a bank without sufficient years' experience for computing an average as provided for above will be permitted to set up a reserve commensurate with the average experience of other similar banks with respect to the same type of loans, preferably in the same locality, subject to adjustment after a period of years when the bank's own experience is established.

We think it clear that under paragraph 5 of respondent's ruling, Mim. 6209, *supra*, a bank is required to use its own experience in determining its 20-year moving average experience factor, unless it is newly organized or does not have a 20-year experience of its own, in which case it may use a substituted experience of another bank to complete the 20-year computation. The record shows that petitioner had been in existence for over 20 years at the time its 1947 and 1948 returns were prepared, that the bad debt ratios for each of the 19 years preceding the taxable year involved were determinable, and that the 20-year moving average ratio could be computed in accordance with the provisions of respondent's ruling.

The purpose of the 20-year experience in computing the reserve for bad debts is to equalize between past bad debt experience and future bad debt expectations so that a particular bank may be recompensed for past losses by bringing the reserve to a maximum figure, before charging the reserve with current losses, and to provide the bank with a cushion adequate to protect it against anticipated future losses. Once the maximum reserve is reached the charges and the credits should balance out over a period of years. The difficulty in the instant proceeding is that petitioner's 20-year average extends back through the depression years of 1929 through 1934. During that period the loss ratios of the neighboring banks were much greater than those of petitioner as a result of the conservative banking practices of its management throughout that period, and continuing until 1943, when the petitioner's present manager acquired ownership and control. There appears no reason for allowing petitioner a recompense based upon losses not suffered by it.

The record shows that in response to petitioner's timely request respondent approved petitioner's application to adopt the reserve method of treating bad debts. No permission was given to petitioner to compute its reserve by use of a substituted bad debt experience of another bank. Accordingly, petitioner has the burden of establishing that respondent's action was arbitrary and unreasonable. *Southeastern Finance Co.*, 4 T. C. 1069, 1088, affirmed on other issues 153 F. 2d 205; *Apex Brewing Co.*, 40 B. T. A. 1110, 1119. The fairness of the respondent's determination is readily evident when the petitioner's actual bad debt loss record for 1947 and 1948 is compared with respondent's moving average ratios based upon petitioner's own bad debt experience. The actual percentages of losses experienced by petitioner over the 20-year periods ending on December 31, 1947, and 1948, respectively, were .000834 and .001741. The moving average ratios computed by the respondent for the years 1947 and 1948 were .006490 and .006745. Stated differently, the additions to the bad debt reserve in terms of dollars are as follows:

| Year | Net losses | Addition allowed by respondent | Addition claimed by petitioner |
|---|---|---|---|
| 1947 | $29.00 | $4,648.78 | $12,535.24 |
| 1948 | 4,592.43 | 5,031.43 | 12,308.16 |

We hold that the petitioner has not shown that the respondent's requirement that petitioner use its own experience in computing its bad debt reserve for the taxable years 1947 and 1948 was either arbitrary or unreasonable. Therefore, we sustain the respondent on this issue.

*Decision will be entered for the respondent.*