OPINION. Haekon, Judge: It is provided in section 23 (k) .(1) of the 1939 Code that deduction may be taken for debts which become worthless within a taxable year, “or (within the discretion of the Commissioner) a reasonable addition to a reserve for bad debts.” The petitioner, with permission of the Commissioner, changed from the specific charge-off method of treating its bad debts for income tax purposes to the reserve for bad debt method in 1942. In C. P. Ford & Co., Inc., 28 B. T. A. 156, 158, 159, this Court pointed out that if a taxpayer chooses to use the reserve for bad debt method of dealing with its bad debts, he subjects himself to the reasonable discretion of the Commissioner. We pointed out, further, that the statutory provision, referring to the discretion of the Commissioner, seems to have placed strong emphasis upon the presumption that the Commissioner’s exercise of his discretion in allowing or disallowing an addition to a bad debt reserve is reasonable. Ordinarily, at any rate, the Commissioner’s determination is prima facie correct and the taxpayer has the burden of proving error in the Commissioner’s determination. In this case, for the years 1949, 1950, and 1951, the Commissioner has applied the provisions of his ruling, Mim. 6209, 1947-2 C. B. 26, to petitioner. That ruling is declaratory of the Commissioner’s position with respect to reasonable annual additions to reserves for bad debts by banks in general. The provisions of Mim. 6209 are lengthy and to avoid the task of reproducing it in full here we make reference to it in its entirety. However, paragraphs 2 and 3 thereof are particularly in point in considering the issue presented here and we therefore quote the pertinent parts of those two paragraphs which are as follows: 2. In determining a reasonable annual addition to a reserve for bad debts by a bank it is believed to be fair and sufficiently accurate to resort to the average annual bad-debt loss of the bank over a period of 20 years, to include the taxable year, as constituting a representative period in the bank’s history and to accept the equivalent percentage of presently outstanding loans as indicative of the probable annual accruing loss. * * * However, such reserve can not be permitted to accumulate indefinitely simply because of the possibility that at some future date large losses may be concentrated within a relatively short period of time and operate to absorb the greatest probable reserve. To permit this would sanction the deduction of a mere contingency reserve for losses, which is not an allowable deduction for income or excess profits tax purposes. This latter rule makes imperative the imposition of some reasonable ceiling on the accumulation of the reserve other than such indefinite limitation as might eventually prevail under a moving average method. 3. The Bureau has accordingly approved the use by banks of a moving average experience factor for the determination of the ratio of losses to outstanding loans for taxable years beginning after December 81, 1946. Such a moving average is to be determined on a basis of 20 years, including the taxable year, as representing a sufficiently long period of a bank’s experience to constitute a reasonable cycle of good and bad years. The percentage so obtained, applied to loans outstanding at the close of the taxable year, determines the amount of permissible reserve in the case of a bank changing to the reserve method in such year * * * and the minimum reserve which the taxpayer will be entitled to maintain in future years * * *. A bank, following a change to the reserve method of accounting for had debts, may continue to take deductions from taxable income equal to the current moving average percentage of actual bad debts times the outstanding loans at the close of the year, or an amount sufficient to bring the reserve at the close of the year to the minimum mentioned above, whichever is greater. Such continued deductions will be allowed only in such amounts as will bring the accumulated total at the close of any taxable year to a total not exceeding three times the moving average loss rate applied to outstanding loans. It is clear that under the Commissioner’s ruling, Mim. 6209, supra, a bank is required to use its own experience in determining its 20-year moving average loss rate, unless it does not have a 20-year experience of its own. First National Bank of La Feria, 24 T. C. 429, 432. Petitioner is not a new bank. Petitioner has a 20-year experience of its own. Petitioner has never received the Commissioner’s consent to use a substituted bad debt experience of another bank or of other banks. In making his determinations, which have given rise to the deficiencies, the Commissioner has used petitioner’s own 20-year experience in applying the provisions of Mim. 6209. The questions are: First, whether petitioner must use its own experience in determining additions to its reserve for bad debts rather than the experience of other banks represented by the ratio determined by the Federal Reserve Bank of Chicago. If the respondent is sustained on the first question, the second question is whether the petitioner is entitled to a deduction in any amount in each of the years 1949-1951, inclusive, for addition to its bad debt reserve. The only reason advanced by petitioner for its contention that it should be allowed to substitute for its own experience what it calls “the ratio as determined by the Research Department, Federal Reserve Bank of Chicago” is that the new management of the bank under Kewley, who acquired the stock of the bank in 1939, instituted a new policy of liberality in making loans. There is a strong suggestion in the testimony of a witness for the petitioner, an accountant in the accounting firm which prepared petitioner’s returns for the taxable years, that because of the change in the management of petitioner in 1939, petitioner is entitled to receive the status of a newly organized bank. Assuming this to be all or part of petitioner’s theory, petitioner has failed to establish facts which support such theory and we therefore conclude that it is without merit. For example, there is no evidence in this case that petitioner expected large losses; there is no evidence about the loss experience of any neighboring bank as compared with petitioner’s experience. This Court rejected a similar argument in First National Bank of La Feria, supra. The evidence shows that for the year 1949, the net bad debt loss of petitioner was $3,616.36; that for the year 1950, petitioner’s experience showed a net recovery of bad debts in the amount of $1,003; and that for the year 1951, petitioner’s net recovery of bad debts amounted to $456.10. Petitioner has failed to prove that it is entitled to compute its bad debt reserve by use of a substituted bad debt experience of another bank or other banks. This brings us to the second question, whether petitioner is entitled to any deduction in each of the taxable years for addition to its bad debt reserve; and whether the Commissioner’s determinations are unreasonable, arbitrary, and an abuse of discretion. On the basis of petitioner’s actual 20-year experience, and under the method set forth in Mim. 6209, supra, petitioner’s ceiling for the years 1949,1950, and 1951, would be in the amounts of $27,224.92, $29,567.64, and $32,040.09, respectively. However, petitioner had accumulated a reserve for bad debts as of December 31, 1948, in the amount of $52,737.60. Petitioner’s accumulated reserve at the end of 1948 was so greatly in excess of the permissive ceilings for 1949,1950, and 1951, under Mim. 6209, supra, that it cannot be concluded that respondent’s disallowance of any addition to the reserve for each of the taxable years was unreasonable or an abuse of his discretion. The petitioner has failed to establish that it is entitled to any deduction in each of the taxable years for addition to its reserve for bad debts. The facts here are such as to bring petitioner squarely within the scope and purpose of the Commissioner’s ruling, Mim. 6209. The ruling imposes a limitation upon the amount of the accumulation of the bad debt reserve. Petitioner’s accumulated reserve at the end of 1948 already exceeded petitioner’s ceiling. The Commissioner’s determinations are sustained. Decision will T>e entered for the respondent.