AMERICAN STATE BANK, a Wisconsin banking corporation, Plaintiff,

v.

UNITED STATES of America, Defendant (two cases).

Nos. 58–C–97, 58–C–192.

United States District Court
E. D. Wisconsin.

Sept. 3, 1959.

Harvey W. Peters, Milwaukee, Wis., for plaintiff.

Edward G. Minor, U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

The above are actions for refund of alleged overpayments of income taxes for the years 1953, 1954, and 1955 in the total amount of $85,657.76. The controversy concerns amounts of allowable deductions as reasonable additions to a reserve for bad debts under Section 23 (k) (1), 26 U.S.C.A., I.R.C.1939, as amended, applicable for the year 1953, and Section 166(c), 26 U.S.C.A., I.R.C. 1954, for the years 1954 and 1955.

The court has jurisdiction of these actions under Section 1346, as amended, of Title 28 U.S.C.A. (1948).

Section 23(k) (1), I.R.C.1939, and Section 166(c), I.R.C.1954, provide for a deduction for a reasonable addition to a reserve for bad debts where the taxpayer has adopted the reserve method with the consent of the Commissioner.

Mimeograph 6209, Cum. Bull. 1947–2, page 26, proposed a method of computing allowable reserves for bad debts in the case of banks. This method permits a bank to compute its probable annual accruing loss by applying a moving average loss experience factor or ratio to loans outstanding at the end of the taxable year.

The moving average experience factor is obtained by averaging ratios of net

losses to outstanding loans over a period of 20 years. Resort to a 20 year period reflecting a cycle of good and bad years of experience in computing allowable additions to reserve is believed to furnish an adequate historical pattern for estimating the adequacy of reserves in relation to future losses, thereby effectuating the objective of the Mimeograph of proposing a method for determining a "reasonable" addition to reserve.

A newly organized bank, or one without sufficient years' experience for computing such an average, is permitted to set up reserves commensurate with the average experience of other similar banks, preferably in the same locality with respect to the same type of loans, subject to adjustment after a period of years when the bank's own experience is established.

Mimeograph 6209 also provides for a ceiling on the accumulation of the reserve, the ultimate total of which is not to exceed three times the moving average loss ratio applied to outstanding loans.

Revenue Ruling 54–148, Cum. Bull. 1954–1, page 60, and Revenue Ruling 57–350, Cum. Bull. 1957, page 144, supplement Mimeograph 6209 by approving an alternative method to be used in computing reasonable additions to reserve. This permits the use of a period consisting of any 20 consecutive years of experience after 1927 in lieu of a moving average experience factor determined on a basis of 20 years, including the taxable year. Newly organized banks availing themselves of the alternative method are to be permitted to substitute comparable experience for that portion of the 20 year period during which they were not in existence.

The supplemental Rulings preserve to banks the heavy bad debt loss experience of the depression years which, under Mimeograph 6209, would no longer be available as factors in the computation of the moving average loss ratio.

The parties have stipulated to substantially all pertinent facts in these actions. These may be summarized as follows:

1. Plaintiff, American State Bank, hereinafter referred to as the "Bank," was organized as a banking corporation under the laws of Wisconsin in 1931. Its sole place of business is in the City of Milwaukee, Wisconsin, at a downtown location to which it moved in 1947.

2. Beginning with the year 1945, the Bank, with the consent of the Commissioner, has used the reserve method of treating bad debts for federal income tax purposes.

3. Deductions claimed by the Bank as additions to reserve and respective loss ratios on which additions were based:

| | | |
|---|---|---|
| 1953 | $42,392.16 | .3679% |
| 1954 | 95,640.84 | .9326 |
| 1955 | 81,576.62 | .9326 |

4. Deductions ultimately allowed as additions to reserve by the Commissioner and respective loss ratios:

| | | |
|---|---|---|
| 1953 | $30,087.80 | .14808% |
| 1954 | 14,957.15 | .2608 |
| 1955 | 23,512.74 | .2608 |

5. Amounts of tax and interest paid by Bank as additional assessments and timely claimed as refunds, disallowed by the Commissioner (not including amounts previously paid and refunded in respect to the years 1954 and 1955):

| | | |
|---|---|---|
| 1953 | $ 6,320.54 | $ 718.65 |
| 1954 | 41,955.52 | 4,150.76 |
| 1955 | 30,193.21 | 2,319.08 |

6. American State Bank's net charge-offs:

| | |
|---|---|
| 1953 | $32,834.48 |
| 1954 | (2,894.49) |
| 1955 | 3,004.77 |

7. American State Bank's net uninsured loans outstanding:

| | |
|---|---|
| 1953 | $11,482,107.69 |
| 1954 | 12,624,493.02 |
| 1955 | 14,427,460.00 |

8. American State Bank's reserves for bad debts as of January 1:

| | |
|---|---|
| 1953 | $53,754.78 |
| 1954 | 51,000* |
| 1955 | 68,850* |
| 1956 | 89,350* |

\* Approximate amounts arrived at by adding excess of allowed additions over net charge-offs.

9. The Bank is a member bank of the Seventh Federal Reserve District. The Marshall & Ilsley Bank and the Bank of Commerce may be considered comparable to plaintiff Bank in location and nature of loans. Loss ratios of these banks for the years in question are as follows:

| Year | American State Bank | Seventh Federal Reserve District | Marshall & Ilsley Bank | The Bank of Commerce |
|---|---|---|---|---|
| 1928 | Not in existence | 0.329% | .29179% | .3290%** |
| 1929 | "    "    " | .554 | .37490 | .5544** |
| 1930 | "    "    " | .563 | .60530 | .0000 |
| 1931 | 0.000% | 1.306 | 1.05720 | .0260 |
| 1932 | 0.000 | 2.565 | 1.69307 | 3.9820 |
| 1933 | 0.000 | 6.475 | .57183 | (.0403) |
| 1934 | .610 | 3.625 | 2.23646 | .7774 |
| 1935 | 1.355 | 1.570 | 5.12096 | 2.9305 |
| 1936 | (.297) | .870 | 1.71450 | 7.0405 |
| 1937 | .005 | (.181) | .49956 | 2.1244 |
| 1938 | .232 | .009 | .49085 | .5904 |
| 1939 | .033 | (.034) | .77021 | .1291 |
| 1940 | .158 | (.139) | .11844 | (.1417) |
| 1941 | .110 | (.095) | (.32958) | .3755 |
| 1942 | .446 | (.177) | (.2573) | .3834 |
| 1943 | (.079) | (.307) | .00754 | .0530 |
| 1944 | (.105) | (.177) | .07627 | .3522 |
| 1945 | (.026) | (.135) | (.14084) | .0845 |
| 1946 | .010 | (.018) | .02363 | (.0094) |
| 1947 | .009 | .053 | .00942 | .0616 |
| 1948 | .139 | .068 | Not available | Not available |
| 1949 | (.002) | .099 | "    " | "    " |
| 1950 | .038 | (.025) | "    " | "    " |
| 1951 | .011*** | .005 | "    " | "    " |
| 1952 | .048 | .004 | "    " | "    " |
| 1953 | .286 | .035 | "    " | "    " |

\*\* Bad debt loss experience of Seventh Federal Reserve Member Banks.
\*\*\* Discrepancy in stipulations.

10. To determine additions to reserve for the year 1953, the Bank used a loss ratio based on the 20 year period, ending with its taxable year, and substituted the bad debt loss experience percentage of member banks of the Seventh Federal Reserve District for the years 1934, 1935, and 1936.

11. For the years 1954 and 1955, the Bank used the 20 year period from 1928 through 1947 and substituted the Seventh Federal Reserve District percentage for the years 1928 through 1936.

12. The Commissioner disallowed deductions to the extent that they were based on substituted loss ratios for the years the Bank was in actual existence.

The Bank claims that the deductions as allowed by the Commissioner are unreasonable and arbitrary in that they are

based on a computation by mechanical formula which does not consider the expressed objectives of the Commissioner's Rulings of reflecting the experience of good and bad years, including those of the depression of the 1930's. The determinations allegedly do not properly reflect the Bank's probable annual accruing loss since the Bank, being newly organized, had little or no loss experience of its own during the heavy loss years, whereas other banks sustained losses during those years on loans made during the more prosperous predepression period. Furthermore, a greater loss expectation would follow from the Bank's move to a downtown location because of changes in the Bank's policy and in the nature of its loans. Two comparable Milwaukee downtown banks, the Bank of Commerce and Marshall & Ilsley Bank, compute their probable annual accruing loss on a ratio several times that allowed plaintiff Bank, and the average bad loss experience of member banks of the Seventh Federal Reserve District also greatly exceeds that allowed the Bank.

The Bank also contends that its claimed additions to reserve are reasonable in that its computations are based on reasonable approximate estimates as shown by the stipulated evidence and uncontroverted testimony.

■■ A taxpayer who uses the reserve method for purposes of bad debt deductions under Section 23(k) (1), I.R.C.1939, and Section 166(c), I.R.C.1954, subjects himself to the reasonable discretion of the Commissioner. Union National Bank & Trust Co. of Elgin, 1956, 26 T.C. 537. The taxpayer must show that there was an abuse of discretion by the Commissioner in the disallowance of the deduction, and that the Commissioner's determination as to what constituted a "reasonable" addition to the reserve was unreasonable. Maverick-Clarke Litho Co. v. C. I. R., 5 Cir., 1950, 180 F. 2d 587; S. W. Coe & Co. v. Dallman, 7 Cir., 1954, 216 F.2d 566.

■ What constitutes a reasonable addition to a reserve, regardless of formula, depends upon the facts and circumstances of the business engaged in with relation to general business conditions. Black Motor Co., 1940, 41 B.T.A. 300, affirmed 6 Cir., 1942, 125 F.2d 977. The standard is whether the reserve itself is adequate to absorb the bad debts that might probably arise. Krim-Ko Corporation, 1951, 16 T.C. 31; Newlin Machinery Corporation, 1957, 28 T.C. 837.

The reasonableness of the Commissioner's application of the formula proposed in Mimeograph 6209, prior to issuance of supplementary Rulings, has been reviewed by the courts. Two actions, First National Bank of La Feria, 1955, 24 T.C. 429, affirmed 5 Cir., 1956, 234 F.2d 868, and Union National Bank & Trust Co. of Elgin, 1956, 26 T.C. 537, while not involving newly organized banks, present somewhat analogous claims and questions to those of the case at bar.

In both cases taxpayer banks contended that a change in loan policy from conservative to liberal, resulting from a change in ownership and management, warranted an expectation of larger losses than those reflected by the banks' actual past experience. It was claimed that this expectation required substitution of the experience of other banks for certain years of the 20 year cycle, notwithstanding the fact that the taxpayer banks were in existence during the years for which substitution was proposed. In both cases the Commissioner's disallowance of the deductions, thus computed on the basis of substituted experience, was approved by the courts.

In the La Feria case, the court held that a taxpayer was not entitled to a deduction based upon losses not suffered by it. The fairness of the Commissioner's determination was considered to be shown by a comparison of the actual percentage of the loss experience in the years in question with the moving average loss ratio based on taxpayer's experi-

ence. In terms of dollars these losses were $29 and $4,592.43 as compared with allowed additions to reserve of $4,648.78 and $5,031.43, respectively.

In the Elgin case, the court held that the taxpayer who had contended that the change in management entitled it to the status of a newly organized bank failed to establish supporting facts to show expected large losses, either independently or by comparison with the loss experience of neighboring banks.

Mimeograph 6209 does not have the force of law. In First National Bank at Wilkinsburg v. Commissioner, T.C.Memo Dec., P.H. Vol. 23, p. 54–565 (1954), the Commissioner's use of the proposed formula was set aside where the additions to the reserve allowed for the two years in question were less in total than the total net charge-offs for these years.

In light of the rules of the above cases it appears that the standard of reasonableness of annual additions to reserves is predicated on the adequacy of amounts allowed to offset charge-offs and to accumulate reserves sufficient to absorb reasonably anticipated bad debt losses.

The question presented here, therefore, is whether or not the evidence shows present or anticipated future losses of such nature as would render the allowed additions inadequate.

The opinion of Mr. John Butcher, the Bank's President, that a recurrence of the depression of the 1930's and concomitant excessive bad debt losses by banks might reasonably be expected does not establish the probability that the Bank will sustain such losses.

Reference to historical patterns, including years of excessive bad debt losses in determining probable annual accruing loss as proposed in Mimeograph 6209 and supplemental Rulings, may be interpreted as a recognition by the Commissioner that heavy loss experience should be considered in the computation of "reasonable" additions to reserve. Such recognition does not establish the probability that the Bank will sustain future losses beyond the absorption capacity of its reserves as accumulated by additions allowed by the Commissioner.

Amounts of additions to reserves and total reserves as considered necessary by the Bank may be dictated by business prudence which considers the proper function of reserves to be protection against excessive future losses. With respect to such a contention, it is held in S. W. Coe & Co. v. Dallman, 7 Cir., 1954, 216 F.2d 566, 570:

"From a viewpoint of sound business management it may be wise to accumulate surplus funds against future contingencies but such is not the type of reserve contemplated by § 23(k) (1), and is not allowable as a deduction for bad debt reserve."

The evidence does not show that the Bank's loss experience has been or will be materially altered as a result of its move to a downtown location. Mr. Butcher testified that the larger volume of commercial loans increased the amount but not the percentage of risk. This statement is substantiated by the increase in outstanding loans (see paragraph 7, supra) and by the Bank's bad debt loss experience (see paragraph 9, supra). Commercial loans may be seasonal or for terms of from 2 to 5 years. Loss percentages for the years from 1948 through 1953 should reflect the Bank's experience with loans of such nature. No appreciable difference may be noted between the percentage of losses in years prior to 1947 and that of later years. No loss percentages are available for the years following 1953 except that testimony showed that for the year 1958 a very small fraction of 1% loss would be charged off (debts of about $12,000 out of $16,000,000 outstanding loans).

It may also be noted that the Bank did not choose to avail itself of its own loss experience sustained in the years following its change of location for purposes of its tax computations for 1954 and 1955.

The loss experience of two comparable downtown Milwaukee banks, as shown in

paragraph 9, supra, does not support a finding that plaintiff Bank has a reasonable expectation of substantially increased bad debt losses. These banks show greater loss percentages than those of plaintiff Bank for the 1930's and for some years of the early 1940's. It is mere conjecture to ascribe these differences to the nature of loans on which the losses were sustained without considering economic conditions such as the lingering depression influence and the individual loan policy of the institutions involved.

The importance of loan policy in loss experience is further emphasized by the differences in loss ratios between the two comparable banks themselves. For the 20 year period from 1928 through 1947, the Bank of Commerce shows an average loss ratio of .9801%, while that of the Marshall & Ilsley Bank is .758289%.

It may also be noted that the Bank of Commerce, which was organized in 1929, two years before plaintiff Bank, uses a substituted ratio for the years prior to its existence only, and no substitution is shown for the year 1930 during which the bank was in existence but had no experience of its own. This bank sustained heavy bad debt losses shortly after its organization, notwithstanding the fact that it enjoyed only a relatively short predepression existence. This fact also tends to corroborate the influence of loan policy on loss experience.

Plaintiff Bank's proposed substitution of experience is that of member banks of the Seventh Federal Reserve District. Other than the general similarity in average loss ratio to that of comparable Milwaukee banks, it has not been shown that the borrowed experience has any relevancy to the Bank's business circumstances, the nature of its outstanding loans, its loan policy, or anticipated future losses, except to the extent that the Bank is a member of that District.

Plaintiff Bank also contends that it is reasonably entitled to the loss ratio claimed by it, or to that allowed for the Bank of Commerce, or for the Marshall & Ilsley Bank, or the average bad debt loss ratio for member banks of the Seventh Federal Reserve District for the years from 1928 to 1947.

This contention illustrates the fallacy of the Bank's position. Such allowance would create fictional, uniform loss ratios for all comparable banks in disregard of the individual business experience and policy of the institutions. Reserves would be created for mere contingencies and would bear little or no relation to the needs of any particular bank.

One further observation may be noted. While the record here does not support a finding of present or anticipated future losses which establish the insufficiency of the allowed additions to reserves or of the inadequacy of the accumulated reserve, it nevertheless demonstrates the Bank's disadvantageous position in respect to deductions from income for tax purposes relative to comparable Milwaukee banks.

The Commissioner's application of the method proposed in the pertinent Rulings results in substantially larger proportionate deductions being available to banks having sustained heavy losses and to those organized subsequent to the heavy loss years than to banks newly organized during these years. Such deductions may be justified in case of banks actually having sustained proportionate losses. However, the disparity between the position of hypothetical banks which had no experience since they were not in existence and may rely on borrowed heavy loss experience, and that of plaintiff Bank which had little or no experience for several of the heavy loss years due to its newness and economic factors, but is denied the use of substituted loss experience, may result in the application of the Commissioner's formula in a discriminatory manner.

■ Tax disadvantage and potential discrimination have not been considered pertinent factors in judging the reasonableness of the Commissioner's determinations as to additions to reserves as

deductions from income. The Bank has not met its heavy burden of showing that the Commissioner's determinations in question here are unreasonable or arbitrary.

The court adopts the stipulation of facts as its findings of fact. Additional findings of fact and conclusions of law are as set forth in the opinion. Defendant's counsel is directed to prepare an order for judgment and judgment dismissing each action, submitting the same to plaintiff's counsel for approval as to form only.