THE BOARDWALK NATIONAL BANK OF ATLANTIC CITY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70527. Filed September 14, 1960.

*Logan Morris, Esq.*, for the petitioner.
*Edward L. Newberger, Esq.*, for the respondent.

FISHER, *Judge:* This case involves deficiencies determined by respondent in the following amounts:

1954 _____ $49,986.66
1955 _____ 84,689.54

The parties agree that petitioner was entitled to a deduction of $596.88 for amortization and depreciation in each of the years 1954 and 1955 which had not been claimed on petitioner's returns. The sole issue before us is whether petitioner in computing its bad debt deductions for the years in question was entitled to base its computations on the average of the annual percentages for each of 20 specified years. (Method 2.)

### FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

The Boardwalk National Bank of Atlantic City, hereafter referred to as petitioner, is a national banking corporation organized under the National Banking Act in the year 1907. It is engaged in the general business of banking and has its principal office in Atlantic City, New Jersey. It filed its income tax returns for the taxable years 1954 and 1955 with the district director of internal revenue, Camden, New Jersey.

Petitioner's books and records are kept on an accrual basis and its annual accounting period is the calendar year. Its income tax returns have been filed consistently on that basis for said accounting period.

Prior to 1947, petitioner deducted bad debts by the specific chargeoff method.

On December 8, 1947, the Treasury approved a ruling of the Commissioner of Internal Revenue, Mim. 6209 (1947-2 C.B. 26), which permitted banks to elect to change from the specific chargeoff to the reserve method of accounting for bad debts. The mimeograph provided that a bank using the reserve method of computing the addi-

tion to its reserve for bad debts was to use a moving average to be determined on a basis of 20 years, including the taxable year.

In its 1947 income tax return petitioner elected to change to the reserve method. The moving average percentage of bad debt losses to outstanding loans in determining the bank's bad debt reserve was computed on the basis of total net losses for the 20-year period divided by the total outstanding loans for that period. (The above method of computation by use of the overall average loss for all years shall be referred to hereafter as Method 1.)

For the years 1948 and 1949, experience factors similarly determined by the use of Method 1 on a moving average method were used in computing additions to the reserve for bad debts. The returns for the years 1947, 1948, and 1949 were examined, and no changes were made to the bad debt reserve or deductions as claimed in the returns.

Prior to the due date for filing the 1950 income tax return, petitioner wrote a letter dated January 12, 1951, to the Commissioner of Internal Revenue requesting permission to change its method of computing the moving average percentage. In a letter dated January 25, 1951, the Bureau of Internal Revenue refused to grant such permission.

Petitioner filed its returns for the years 1950 to 1953, inclusive, by computing the percentage of bad debt losses to outstanding loans on an average of the total percentages computed for each of the 20 years. (The above method of computation by use of the average of the annual percentages for each year shall be referred to hereafter as Method 2.) The use of Method 2 resulted in additions to the reserve in 1950 and 1951, in the respective amounts of $99,042.35 and $81,996.47, but no additions in 1952 or 1953, since the ceiling for those years, as set by Mim. 6209, was reached. The returns for the years 1950–1952, inclusive, were not examined. The return for the year 1953 was examined and no adjustment was made to the bad debt reserve since no addition was claimed.

On April 8, 1954, Rev. Rul. 54–148 (1954–1 C.B. 60), supplementing Mim. 6209, was issued effective for taxable years beginning after December 31, 1953. It provided that a bank in computing a reasonable addition to its reserve for bad debts may use an average experience factor based on any 20 consecutive years of experience after 1927 in lieu of a moving average determined on a basis of 20 years including the taxable year.

Rev. Rul. 54–597 (1954–2 C.B. 90) provided that a bank using the moving average percentage of bad debt losses to outstanding

loans in determining additions to its bad debt reserve, as provided in Mim. 6209, or, in the alternative, the average experience factor based on any 20 consecutive years of experience after the year 1927 as provided in Rev. Rul. 54–148, may compute either percentage on the basis of the total net losses for the 20-year period divided by the total outstanding loans for that period (Method 1), or on the basis of an average of the total percentages computed for each of the 20 years (Method 2), provided that the method of computation adopted is consistently followed.

Petitioner, in its 1954 income tax return, changed its 20-year period as permitted by Rev. Rul. 54–148 using the 20-year period 1928–1947, inclusive, and continued to use the same 20-year period in its 1955 return. In its returns for the years 1954 and 1955, petitioner continued to use Method 2 in computing its additions to the reserve and claimed the following deductions as additions to its reserve for bad debts.

| | |
|---|---|
| 1954 | $96,725.08 |
| 1955 | 163,461.38 |

Respondent disallowed the foregoing additions, and by the use of Method 1 determined that petitioner's reserve for bad debts at the close of the taxable years in question, before any current additions, exceeded the maximum allowable reserve as prescribed by Rev. Rul. 54–148.

The following schedule shows the actual bad debt experience of petitioner for the years 1928 to 1955, inclusive:

| Year | Net loans | Net chargeoffs | Year | Net loans | Net chargeoffs |
|---|---|---|---|---|---|
| 1928 | $1,521,742 | $19,784 | 1942 | $2,612,136 | $864 |
| 1929 | 955,240 | 6,340 | 1943 | 3,385,271 | 2,348 |
| 1930 | 887,141 | 2,550 | 1944 | 7,389,065 | 363 |
| 1931 | 812,628 | 22,773 | 1945 | 8,534,478 | 536 |
| 1932 | 686,043 | 19,398 | 1946 | 11,651,930 | 3,036 |
| 1933 | 758,378 | 850 | 1947 | 14,417,168 | 5,109 |
| 1934 | 884,145 | 18,511 | 1948 | 12,798,271 | 10,618 |
| 1935 | 889,252 | 36,418 | 1949 | 14,200,887 | 2,290 |
| 1936 | 1,338,356 | (2,222) | 1950 | 16,125,423 | 1,928 |
| 1937 | 1,726,669 | (172) | 1951 | 17,266,050 | 2,739 |
| 1938 | 2,145,169 | 1,091 | 1952 | 17,909,372 | 6,841 |
| 1939 | 2,355,305 | 2,775 | 1953 | 20,634,493 | 3,814 |
| 1940 | 4,888,016 | 702 | 1954 | 22,890,732 | 2,281 |
| 1941 | 3,421,981 | 1,745 | 1955 | 28,879,401 | 3,920 |

Under Method 1 the correct percentage for each of the taxable years is 0.002062. Under Method 2, the correct percentage is 0.007211.

The following statistics on all member banks (petitioner being a member) were prepared and published by the Third Federal Reserve District for the years 1927–1958, inclusive.

NET LOANS—NET LOSSES OR RECOVERIES ON LOANS—RATIO OF NET LOSSES OR RECOVERIES TO LOANS

All Member Banks—Third Federal Reserve District
(Amounts in thousands of dollars)

| Year | Net loans (end of yr.) | Losses and Charge-offs | Recoveries | Net loss (−) or recovery (+) on loans | Ratio of net loss (−) or recovery to loans |
|---|---|---|---|---|---|
| 1927 | $1,616,000 | $4,902 | $824 | −$4,078 | −0.25% |
| 1928 | 1,745,000 | 6,727 | 712 | −6,015 | −0.34 |
| 1929 | 1,859,000 | 6,365 | 782 | −5,583 | −0.30 |
| 1930 | 1,767,000 | 12,816 | 861 | −11,955 | −0.68 |
| 1931 | 1,521,000 | 21,570 | 984 | −20,586 | −1.35 |
| 1932 | 1,313,000 | 32,402 | 675 | −31,727 | −2.42 |
| 1933 | 1,061,000 | 28,979 | 1,173 | −27,806 | −2.62 |
| 1934 | 1,012,000 | 33,518 | 1,334 | −32,184 | −3.18 |
| 1935 | 945,000 | 24,997 | 3,703 | −21,294 | −2.25 |
| 1936 | 939,000 | 17,233 | 3,592 | −13,641 | −1.45 |
| 1937 | 957,000 | 10,523 | 3,139 | −7,384 | −0.77 |
| 1938 | 906,000 | 10,625 | 1,449 | −9,176 | −1.01 |
| 1939 | 945,000 | 12,167 | 1,867 | −10,300 | −1.09 |
| 1940 | 1,020,000 | 11,927 | 1,945 | −9,982 | −0.98 |
| 1941 | 1,118,000 | 13,340 | 3,070 | −10,270 | −0.92 |
| 1942 | 925,000 | 7,932 | 2,196 | −5,736 | −0.62 |
| 1943 | 852,000 | 6,050 | 3,545 | −2,505 | −0.29 |
| 1944 | 808,000 | 5,978 | 4,484 | −1,494 | −0.18 |
| 1945 | 934,000 | 3,571 | 4,449 | +878 | +0.09 |
| 1946 | 1,263,000 | 1,808 | 4,226 | +2,418 | +0.19 |
| 1947 | 1,582,000 | 3,370 | 3,355 | −15 | * |
| 1948 | 1,742,000 | 2,145 | 2,538 | +393 | +0.02 |
| 1949 | 1,794,000 | 3,082 | 2,207 | −875 | −0.05 |
| 1950 | 2,208,000 | 2,981 | 2,365 | −616 | −0.03 |
| 1951 | 2,484,000 | 2,771 | 2,640 | −131 | −0.01 |
| 1952 | 2,763,000 | 2,193 | 1,449 | −744 | −0.03 |
| 1953 | 3,043,000 | 3,464 | 1,814 | −1,650 | −0.05 |
| 1954 | 3,214,000 | 4,475 | 1,833 | −2,642 | −0.08 |
| 1955 | 3,818,000 | 5,847 | 2,200 | −3,647 | −0.10 |
| 1956 | 4,113,000 | 7,083 | 1,959 | −5,124 | −0.12 |
| 1957 | 4,209,000 | 6,026 | 2,606 | −3,420 | −0.08 |
| 1958 | 4,347,000 | 5,979 | 3,172 | −2,807 | −0.06 |

*Less than 0.005.

In computing petitioner's taxable net income for each of the years 1954 and 1955, respondent allowed as deductions on account of amortization and depreciation, the amount of $596.88 which had not been claimed as deductions by petitioner.

OPINION.

The parties agree that for the taxable years in question petitioner was entitled to use an experience factor based on the 20 years 1928–1947, inclusive, in computing its reserve for bad debts. The only point in issue is whether petitioner is entitled to an election to use Method 2 in computing its reserve for bad debts for the years 1954 and 1955.

In lieu of the method of specifically charging off actual bad debts, section 166(c) of the Code of 1954 allows deduction of reasonable additions to a reserve for bad debts in the discretion of the Secretary or his delegate.[1]

[1] SEC. 166. BAD DEBTS.

(c) RESERVE FOR BAD DEBTS.—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts.

Prior to 1947 petitioner deducted bad debts by the specific charge-off method. In Mim. 6209, 1947–2 C.B. 26, the Bureau of Internal Revenue approved a reserve method for computing bank bad debts based on a 20-year moving average.[2]

Petitioner, on its 1947 return, elected to use the reserve method based on the 20-year moving average. On its returns for the years 1947–1949, inclusive, petitioner used Method 1 in computing its moving average, although Mim. 6209, *supra*, did not set forth any specific method of computation.

The returns for 1947–1949, inclusive, were examined and no changes were made.

In January 1951, petitioner sought respondent's permission to use Method 2 in computing the moving average. Such permission was

---

[2] The pertinent provisions of Mim. 6209 state:

1. The Bureau has given careful and extended consideration to the situation of banks in general with respect to the use of reserves for bad debts, the proper measure of such reserves, and amounts to be allowed as deductions.

2. In determining a reasonable annual addition to a reserve for bad debts by a bank it is believed to be fair and sufficiently accurate to resort to the average annual bad-debt loss of the bank over a period of 20 years, to include the taxable year, as constituting a representative period in the bank's history and to accept the equivalent percentage of presently outstanding loans as indicative of the probable annual accruing loss. * * *

3. The Bureau has accordingly approved the use by banks of a moving average experience factor for the determination of the ratio of losses to outstanding loans for taxable years beginning after December 31, 1946. Such a moving average is to be determined on a basis of 20 years, including the taxable year, as representing a sufficiently long period of a bank's experience to constitute a reasonable cycle of good and bad years. The percentage so obtained, applied to loans outstanding at the close of the taxable year, determines the amount of permissible reserve in the case of a bank changing to the reserve method in such year * * * and the minimum reserve which the taxpayer will be entitled to maintain in future years. * * * A bank, following a change to the reserve method of accounting for bad debts, may continue to take deductions from taxable income equal to the current moving average percentage of actual bad debts times the outstanding loans at the close of the year, or an amount sufficient to bring the reserve at the close of the year to the minimum mentioned above, whichever is greater. Such continued deductions will be allowed only in such amounts as will bring the accumulated total at the close of any taxable year to a total not exceeding three times the moving average loss rate applied to outstanding loans. * * *

4. In computing the moving average percentage of actual bad debt losses to loans, the average should be computed on loans comparable in their nature and risk involved to those outstanding at the close of the current taxable year involved. Government insured loans should be eliminated from prior year accounts in computing percentages of past losses, also from the current year loans in computing allowable deductions for additions to the reserve. Losses not in the nature of bad debts resulting from the ordinary conduct of the present business should also be eliminated in computing percentages of prior losses.

  *   *   *   *   *   *   *

6. Bad debt losses sustained are to be charged to the reserve, and recoveries made of specific debts which have been previously charged against the reserve by a bank on the reserve method of treating bad debts should be credited to the reserve.

7. Where a bank making its return on the basis of the calendar year 1947 wishes to avail itself of the provisions of this mimeograph and to change from the specific charge-off to the reserve method of accounting for bad debts, the time for making application for such change under section 29.23(k)–1, Regulations 111, has been extended to March 15, 1948 * * *. If such bank files its return on or before March 15, 1948, on the reserve method, and the return is accompanied by a written statement setting forth the election to use such method and explaining in detail the computations of the bad debt deduction shown in the return, such return will be accepted as a timely application.

denied. Nevertheless, petitioner used Method 2 in its returns for 1950–1953, inclusive. (These years are not before us.) Additions to the reserve for bad debts were made in the returns for 1950 and 1951, but no additions were made in the 1952 or 1953 returns. The only return examined for the period 1950–1953 was the 1953 return and no changes were made.

Rev. Rul. 54–148, 1954–1 C.B. 60,[3] permitted the use of an average

---

[3] Rev. Rul. 54–148 states:

A bank, in computing a reasonable addition to its reserve for bad debts, may use an average experience factor based on any 20 consecutive years of experience after 1927, in lieu of a moving average experience factor determined on a basis of 20 years including the taxable year.

Com.-Mimeograph Coll. No. 6209, C.B. 1947–2, 26, supplemented.

SECTION 1. PURPOSE.

The purpose of this Revenue Ruling is to supplement Com.-Mimeograph Coll. No. 6209 dated December 8, 1947 (C.B. 1947–2, 26), which authorizes, in the case of banks, a special method for computing a reasonable addition to the reserve for bad debts under section 23(k)(1) of the Internal Revenue Code and the regulations promulgated thereunder.

SEC. 2. BACKGROUND.

The Service has carefully reexamined the provisions of Mimeograph 6209, supra, in the light of experience developed thereunder and, as a result of such reexamination, has approved an alternative method for the use of banks in computing the annual addition to the reserve for bad debts and the maximum amount permitted to be accumulated in such reserve, as set forth in section 4 hereunder.

SEC. 3. DEFINITION OF TERMS.

The term "banks" as used herein means banks or trust companies incorporated and doing business under the laws of the United States (including laws relating to the District of Columbia), of any State, or of any Territory, a substantial part of the business of which consists of receiving deposits and making loans and discounts. Such term as used in Mimeograph 6209 and herein does not include mutual savings banks not having capital stock represented by shares, domestic building and loan associations, or cooperative banks without capital stock organized and operated for mutual purposes and without profit.

SEC. 4. ALTERNATIVE METHOD.

.01 In lieu of the moving average experience factor provided in paragraph 3 of Mimeograph 6209, which is determined on a basis of 20 years including the taxable year, a bank may use an average experience factor based on any 20 consecutive years of its own experience after the year 1927. Such average experience factor, representing the percentage of bad debt losses to loans for the period selected, applied to loans outstanding at the close of the taxable year, determines the maximum permissible addition to the reserve for the year.

.02 The amounts permitted to be added in each taxable year to the bad debt reserve under (.01) above may not exceed an amount which will bring the accumulated total in the bad debt reserve at the close of the taxable year to a ceiling equal to three times the average experience factor applied to outstanding loans: Provided,

1. That for the first taxable year beginning after December 31, 1953, the amount of the addition therein to the reserve computed under (.01) above may not exceed one-third of the difference between the ceiling so computed and the accumulated total in the reserve at the close of the year before the addition; and

2. That for the second taxable year beginning after December 31, 1953, the amount of the addition therein to the reserve computed under (.01) above may not exceed one-half of the difference between the ceiling so computed and the accumulated total in the reserve at the close of the year before the addition.

.03 Consistent with the provisions of Mimeograph 6209 which permit newly organized banks and banks without sufficient years' experience of their own to set up a reserve commensurate with the average experience of other similar banks with respect to the same type of loans, preferably in the same locality, banks which select a 20-year period under (.01) above which extends back into years for which they have no experience of their own will be permitted to fill in such years with similar comparable data.

based on 20 consecutive years as an alternative to the 20-year moving average.[4]

Rev. Rul. 54–597, 1954–2 C.B. 90,[5] was then issued, permitting banks to use either Method 1 or Method 2 in computing the 20-year average for determining its reserve for bad debts. This ruling was the first of those cited herein to make specific mention of either of

---

.04  The provisions of paragraph 6 of Mimeograph 6209 relating to the treatment of specific bad debt losses and recoveries, and all other rules utilized in the application of Mimeograph 6209 shall, to the extent not inconsistent, be applicable to the alternative method.

SEC. 5.  EFFECT ON OTHER DOCUMENTS.

This Revenue Ruling merely supplements Mimeograph 6209 by providing an additional or alternative method for computing the annual addition to a reserve for bad debts and the maximum amount permitted to be accumulated in such reserve. Banks which are now using the moving average method provided in Mimeograph 6209 may continue to use that method if they so desire, and such method is still available to any other banks using or changing to the reserve method of accounting for bad debts.

SEC. 6.  BANKS ON SPECIFIC CHARGE-OFF METHOD.

Where a bank on the specific charge-off method of accounting for bad debts desires to avail itself of the provisions of this Revenue Ruling and change to the reserve method, application to make such change must be made in the manner prescribed by section 39.23(k)–1, Regulations 118.

SEC. 7.  EFFECTIVE DATE.

The provisions of this Revenue Ruling are applicable only for taxable years beginning after December 31, 1953.

Approved by M. B. Folsom, Acting Secretary of the Treasury, April 8, 1954.

 4 Rev. Rul. 55–3, 1955–1 C.B. 282, provided that a bank having permission to use and using the reserve method of accounting for bad debts may adopt the option provided in Rev. Rul. 54–148 for any taxable year beginning after December 31, 1953, without obtaining permission from the Commissioner.

 5 Rev. Rul. 54–597 states:

> A bank using the moving average percentage of bad debt losses to outstanding loans in determining additions to its bad debt reserve as provided in Mimeograph 6209, C.B. 1947–2, 26, or the alternative average experience factor based on any 20 consecutive years of experience after the year 1927 as provided in Revenue Ruling 54–148, C.B. 1954–1, 60, may compute either percentage on the basis of the total net losses for the 20-year period divided by the total outstanding loans for that period, or on the basis of an average of the total percentages computed for each of the 20 years, provided that the method of computation adopted is consistently followed.

Advice has been requested as to whether, in computing the moving average percentage of bad debt losses to outstanding loans in determining additions to a bank's bad debt reserve as provided in Mimeograph 6209, C.B. 1947–2, 26, the percentage is to be computed on the basis of total net losses for the 20-year period divided by the total outstanding loans for that period, or on an average of the total percentages computed for each of the 20 years.

For example, a bank has a total net outstanding loan amount for 20 years of $31,700,000 and a total bad debt loss after recoveries for the same 20-year period of $139,600. The total of percentages of bad debts computed for each of the 20 years is .150627. In the first method, that of dividing the total net bad debts by the total loans, a percentage of bad debt losses of .004403 is obtained. In the second method, that of determining the average of the total percentages computed for each of the 20 years, the percentage of .007531 is obtained (1/20th of .150627).

No specific method for the computation of the moving average percentage is prescribed in Mimeograph 6209, supra. Accordingly, it is held that either of the foregoing methods are acceptable for the computation of the moving average percentage provided in Mimeograph 6209, supra, and for the computation of the average experience factor based on any 20 consecutive years of experience after the year 1927 as provided in Revenue Ruling 54–148, C.B. 1954–1, 60, provided that the method of computation adopted is consistently followed.

the two methods of computation.[6] The election was limited by the words "provided that the method of computation adopted is consistently followed."

The essence of petitioner's argument is that Rev. Rul. 54–597, *supra*, gave petitioner an election which it exercised in computing its reserve for bad debts for the years in issue.

Respondent argues that Rev. Rul. 54–148, *supra*, in no way permits a bank to shift from Method 1 to Method 2 in computing its reserve for bad debts, and that petitioner has not proved that respondent abused his discretion or acted arbitrarily in disallowing the claimed additions to the reserve.

Petitioner does not argue that Rev. Rul. 54–148, *supra*, permitted a change from Method 1 to Method 2, but correctly confines the problem to whether or not its election was effective under Rev. Rul. 54–597, *supra*.

We have defined the legal term "election" as, "the choice of one of two rights or things, to each of which the party choosing has an equal right, but both of which he can not have, * * *." (*Samuel W. Weis*, 30 B.T.A. 478, 488 (1934).)

Rev. Rul. 54–597, *supra*, holds that either Method 1 or Method 2 is acceptable if the adopted computation "*is* consistently followed." (Emphasis supplied.) Petitioner maintains that since these two methods were first officially set forth in this ruling, a bank could elect either method under the ruling. We agree with such contention and furthermore note that the word "is" not "was" or "has been" precedes "consistently followed." This indicates that the consistency does not refer to past conduct but is applicable prospectively to the allowable 20-year average under Rev. Rul. 54–148, *supra*, which is effective as to taxable years after December 31, 1953.

Respondent relies upon *Union National Bank & Trust Co. of Elgin*, 26 T.C. 537 (1956); *First National Bank of La Feria*, 24 T.C. 429 (1955), affd. 234 F. 2d 868 (C.A. 5, 1956); and *American State Bank v. United States*, 176 F. Supp. 64 (E.D. Wis., 1959), affd. 279 F. 2d 585 (C.A. 7, 1960). These cases merely hold that the taxpayer involved had failed to meet the burden of proving that respondent was arbitrary or unreasonable in requiring the calculation of bad debt reserves to be based upon taxpayer's own experience (as required by Mim. 6209) rather than on the experience of other banks. In the case at bar, however, petitioner does not depart from applicable revenue rulings. It has merely applied an election which Rev. Rul. 54–597 clearly grants.

---

[6] A special ruling issued on January 29, 1948 (letter to the Committee of Banking Institutions on Taxation, New York 5, New York), stated that either Method 1 or Method 2 was acceptable under Mim. 6209. However, this ruling was never officially published.

Respondent stresses that section 166, *supra*, gives him great latitude and discretion in determining the reasonableness of a reserve for bad debts and cites authorities in support of this principle with which we are in full agreement. The fallacy in applying this principle in the instant case, however, is that respondent *did* exercise his discretion under section 166, *supra*, by publishing a revenue ruling of general application granting an election. The ruling has not been revoked or repudiated. Petitioner made its election under the ruling, and the rest is a matter of calculation.

Groundlessly to except a particular taxpayer from a ruling of general application would, we think, be an abuse of discretion. We need not decide that question in the instant case, however, because we do not think that is respondent's intent, although the practical result is the same. We think his error is to be attributed to his misconstruction of his own ruling. As stated above, the ruling has not been revoked and respondent does not seek to repudiate it.

Actually, he misconstrues and misapplies it.

Under the circumstances we hold that petitioner is entitled to the benefit of the election it made under the ruling.

*Decision will be entered under Rule 50.*