STEWART & BENNETT, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32754.   Promulgated September 16, 1930.

*Jacob Ark, Esq.,* and *H. Earlton Hanes, Esq.,* for the petitioner.
*T. M. Mather, Esq.,* for the respondent.

OPINION.

TRAMMELL: With respect to the disallowance by the respondent of the deduction of $10,000 taken by the petitioner as an addition to its reserve for bad debts, the petitioner contends that under the circumstances present in its case the amount constituted a reasonable addition to its reserve for bad debts.

The respondent although having disallowed the addition to the reserve in determining the deficiency, on the ground that the petitioner had elected in 1921 to report its income on the " actual bad debt method," admitted in his answer that beginning in 1921 and continuing therefrom the petitioner has reported its income on the reserve basis. In his brief he contends that his action should be sustained because the petitioner has not shown that the addition made by it was reasonable.

In view of the admission in the respondent's answer there is no controversy between the parties as to the petitioner's right to use the reserve for bad debts method in reporting its taxable income. The only question is as to the reasonableness of the addition of $10,000 to the reserve.

The petitioner's 1924 return shows that for the five-year period from 1919 through 1923 the petitioner's gross business amounted to $1,264,264.75 and the bad debts for the same period amounted to $3,120.25. During this period the petitioner's business was mostly residential work and the class of customers was different from what it was when the petitioner went into the store-remodeling and masonry business. The mechanic's-lien law could also be invoked as an aid to collection. The 1924 return also shows that the deduction taken for that year as an addition to the reserve for bad debts was only $88.33. During 1925 the petitioner's business increased very materially. In that year about 95 per cent of its business was other than residential work and the detailed supervision was not given to the granting of credit that had been given to it prior to the breakdown of one of the petitioner's officers in 1924. Nor was there available to the petitioner the same remedy for collection as when it was doing residential work which was largely for owners.

In view of the change in the kind of business and the changed circumstances under which the petitioner was doing business in 1925, we do not think that it would be proper to base a determination of

the amount to be added to the reserve for bad debts in 1925 upon the amount of bad debts for prior years. The determination is to be based on conditions existing during 1925. See *Rhode Island Hospital Trust Co.* v. *Commissioner*, 29 Fed. (2d) 339.

While it is apparent that the petitioner was faced with a new situation when it came to determining the amount to be added to its reserve for bad debts, we do not think that this in and of itself should serve as a justification for an unreasonable or excessive addition to such reserve. The basis on which the amount of the addition of $10,000 was computed by the petitioner is set forth in our findings of fact. While Bennett, the accountant who made an analysis of the petitioner's accounts receivable and a member of the accounting firm which audited the petitioner's books, testified as to the $10,000 being in their opinion a reasonable addition to the reserve, we are not bound in our decision by their opinions alone, but must also consider the facts presented in the case, as well as the basis for their opinions. See *Atlantic Bank & Trust Co.*, 10 B. T. A. 796.

In the light of the facts before us, considering the amount of debts at the end of 1925 which were subsequently ascertained to be worthless and never collected, we think that the petitioner is entitled to deduct as an addition to its reserve for bad debts the amount of $7,000. In determining this amount we have given due consideration to the testimony of the witnesses, the experience of the company in the past and also subsequent to 1925. We think the actual facts are inconsistent with a higher amount, indicate that the witnesses' opinions as to a $10,000 reserve as being a reasonable amount were not well founded, and fully bear out and support the amount determined by us to be a reasonable addition to the reserve. As the respondent has allowed $732.47 as a deduction in determining the deficiency, the petitioner is entitled to have the deduction increased by the amount of $6,267.53.

The remaining issue arises from the allegation in the respondent's answer that the petitioner's income for 1925 had been understated by $11,485 as a result of the petitioner having credited to surplus during that year certain real estate, sheds and inventories of supplies and that the deficiency should accordingly be increased. The burden of sustaining this allegation is upon the respondent. We have set out in detail in our findings of fact the manner in which the items complained of by the respondent were handled by the petitioner in computing its taxable income. From the facts we are of the opinion that the respondent has not sustained the burden of showing that the petitioner's income was understated in 1925 as a result of the manner in which the items were handled by it in computing its taxable income. In 1924 the petitioner erroneously

charged the land and sheds to expense. It also charged to expense certain materials and supplies. At the end of 1924, however, the land, sheds, material and supplies were included as a part of the closing inventory for 1924. While as to the land and sheds this. was clearly erroneous, the effect as to all these items was to offset the previous charge to expense. In any event there was no taxable income in 1925 as the result of these transactions.

Counsel for the respondent conceded that as the result of the entries made in 1924 the income for that year was properly stated in the deficiency letter, but contends that for 1925 the credits to surplus of the items previously charged to expense and the inclusion thereof in closing inventory for 1924 and the opening inventory for 1925 resulted in taxable income for 1925.

The respondent is in error in stating that the 1925 opening inventory was the same as the closing inventory for 1924. The petitioner did not include in its opening inventory for 1925 the land and sheds, although it did include in the 1925 opening inventory the materials and supplies at the same figures at which they were included in the 1924 closing inventory. As to the buildings and sheds, and materials and supplies, the petitioner in 1925 placed them on its books as assets, crediting the amounts thereof to surplus. The materials and supplies, however, were included in the opening inventory for that year, the effect of which was to charge to expense of operations for 1925 the materials and supplies actually used during the year. We see no reason why the taxable income determined by this method should be increased as proposed by the respondent. The fact that these items including the sheds and land were put on the books as assets with a corresponding entry crediting surplus for the first time in 1925 does not increase the income for that year. Mere bookkeeping entries alone do not give rise to taxable income. We must consider the actual facts and transactions.

*Judgment will be entered under Rule 50.*