**S. W. COE & CO., Plaintiff-Appellant,**

**v.**

**V. Y. DALLMAN, Collector of Internal Revenue, Defendant-Appellee.**

**No. 11104.**

United States Court of Appeals
Seventh Circuit.

Nov. 10, 1954.

31, 1944. The issue before us concerns additions made by the taxpayer to its reserve for bad debts, which amounts it deducted in computing its net income.

Prior to August 8, 1941, taxpayer used the charge off method for bad debts, but on that date, it was granted permission by the Commissioner of Internal Revenue to change to the reserve method of handling bad debts for tax purposes. On its tax returns the taxpayer deducted as a reserve for bad debts in certain specified years as follows:

| Year | Amount |
|---|---|
| March 31, 1942 | $20,852.39 |
| March 31, 1943 | 21,480.70 |
| March 31, 1944 | 20,029.09 |

Upon an audit of the taxpayer's returns for said three years, the Commissioner re-determined the amounts deductible as additions to taxpayer's reserves for bad debts, resulting in the following increases and decreases:

| Year | Amount | |
|---|---|---|
| March 31, 1942 | $ 6,165.13 | increase |
| March 31, 1943 | (1,623.25) | decrease |
| March 31, 1944 | (6,444.09) | decrease |

The Commissioner issued a certificate of overassessment for 1942 and determined deficiencies for 1943 and 1944. Taxpayer paid to the Collector the net sum of $6,183.91 and filed its claim for a refund. Thereafter, this suit was commenced, and after a trial the District Court held that the reserve for bad debts allowed by the Commissioner for the year 1944 was adequate and that the Commissioner did not abuse his discretion in making his determination of the proper amounts to be added to the bad debts reserve. The District Court found and concluded that there was no evidence to sustain the taxpayer's contention that the reserves allowed by the Commissioner for the year ending March 31, 1944 were inadequate or arbitrary. Judgment was entered dismissing the complaint.

James B. Martin, Ensel, Martin, Jones & Blanchard, Springfield, Ill., for appellant.

H. Brian Holland, Asst. Atty. Gen., Melva M. Graney, Atty., Tax Division, U. S. Department of Justice, Washington, D. C., John B. Stoddart, Jr., U. S. Atty., Springfield, Ill., Ellis N. Slack, Lee A. Jackson, Alonzo W. Watson, Jr., Sp. Assts. to the Atty. Gen., Marks Alexander, Asst. U. S. Atty., Springfield, Ill., for appellee.

Before DUFFY, Chief Judge, and MAJOR and SWAIM, Circuit Judges.

DUFFY, Chief Judge.

This suit was brought for a refund of federal income and excess profits taxes for the fiscal year ending March

In computing the amounts allowable for bad debt reserves the Commissioner used what is frequently referred to as the "Black Motor Co. formula".[1] It is also designated as the six year moving average. Findings of the District Court defined the formula as follows: "This formula takes the ratio of the average of the accounts and notes receivable which were outstanding at the end of the year plus those outstanding the preceding five years to the average of the debts actually charged off during the same period."

Two additional findings of the District Court may be noted:

"12. In 1944, for several years prior thereto, and since, we have been in an inflationary economic period which resulted in a decrease in bad debt charge offs and losses to the taxpayer.

"13. The contention of the taxpayer is based upon anticipated changing economic conditions which have not yet come about."

The question presented to us for decision is whether the District Court correctly concluded that the Commissioner's determination of the allowable additions to the taxpayer's reserve for bad debts in the taxable year in question was a proper exercise of his discretion under § 23(k) (1) of the Internal Revenue Code, 26 U.S.C.A. § 23(k) (1). This statute provides: "§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions: * * * (k) *Bad debts.* (1) *General rule.* Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; * * *."

Treasury Regulations 111, § 29.23(k) –5 covers the subject of reserves for bad debts, and provides:

"§ 29.23(k)–5. *Reserve for Bad Debts.*—Taxpayers who have established the reserve method of treating bad debts, and maintained proper reserve accounts for bad debts, or who, in accordance with § 29.23 (k)–1, adopt the reserve method of treating bad debts, may deduct from gross income a reasonable addition to a reserve for bad debts in lieu of a deduction for specific bad debt items.

"What constitutes a reasonable addition to a reserve for bad debts must be determined in the light of the facts, and will vary as between classes of business and with conditions of business prosperity. It will depend primarily upon the total amount of debts outstanding as of the close of the taxable year, those arising currently as well as those arising in prior taxable years, and the total amount of the existing reserve. In case subsequent realizations upon outstanding debts prove to be more or less than estimated at the time of the creation of the existing reserve, the amount of the excess or inadequacy in the existing reserve should be reflected in the determination of the reasonable addition necessary in the taxable year. A taxpayer using the reserve method should make a statement in his return showing the volume of his charge sales (or other business transactions) for the year and the percentage of the reserve to such amount, the total amount of notes and accounts receivable at the beginning and close of the taxable year, and the amount of the debts which have become wholly or partially worthless and have been charged against the reserve account."

Taxpayer argues that there is not even an intimation in the statute or the regulations that additions to a bad debt reserve are to be controlled "by a rigid arithmetic formula, purely retrospect in

---

1. The formula was applied in Black Motor Co. v. Commissioner, 41 B.T.A. 300, affirmed 6 Cir., 125 F.2d 977. However, there was no discussion of the formula in the opinion of the Court of Appeals.

its effect." Taxpayer contends that it exercised only prudent business judgment in giving consideration in 1944 to the change of the character of its business from auto financing to making loans under the Illinois Small Loans Act, S.H.A. ch. 74, § 19 et seq.; that its business was rapidly expanding by the addition of new branches; that it had an increasing delinquency in its receivables; that prevailing war-time conditions resulted in several of taxpayer's managers being called into service requiring taxpayer to hire inexperienced help; and to the fact that a number of its accounts were frozen under the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A.Appendix, § 501 et seq. Taxpayer cites the following Tax Court decisions and asserts that weight was given in such decisions to one or more of such factors in determining whether additions to the bad debts reserve were reasonable: Stewart & Bennett, Inc., 20 B.T.A. 850; Southeastern Finance Co., 4 T.C. 1069; Proctor Shop, Inc., 30 B.T.A. 721; Apex Brewing Co., 40 B.T.A. 1110; H. W. Porter & Co., Inc., 14 T.C. 307.

■ The contention principally relied on by taxpayer is that the Commissioner used a rigid mathematical formula in determining the amount of additions to the reserve and that a determination reached by such a method is contrary to the provisions of the statute and of the regulations. We grant that a slavish adherence to a formula might, under certain conditions, result in an unreasonable addition to a bad debt reserve, or a failure to make any addition, but such is not the case here. The District Court approved the additions determined by the Commissioner not because the Commissioner reached the result by use of the formula, but only because the additions were reasonable and adequate under the evidence. The statute provides that any allowance of a reasonable addition to the bad debt reserve shall be "in the discretion of the Commissioner". It follows that if the Commissioner's determination as to the amount of

the addition is reasonable, there has been no abuse of discretion. Morris Plan Industrial Bank of New York v. Commissioner, 2 Cir., 151 F.2d 976.

Although we are here primarily concerned with the tax year ending March 31, 1944, it should not be overlooked that the Commissioner also audited taxpayer's returns for the years ending March 31, 1942 and March 31, 1943. The Commissioner determined that the taxpayer was entitled to $6,165.13 greater addition to its bad debt reserve for the year ending March 31, 1942 than it had previously claimed. This is significant because the uncertainties of the war-time economy referred to by taxpayer were then in effect. The Soldiers' and Sailors' Civil Relief Act had been enacted in 1940. Also taxpayer's changeover from automobile financing began in 1938. When the Commissioner determined that taxpayer was entitled to a substantially larger amount for the year 1942 as the addition to its bad debt reserve, he, undoubtedly, gave consideration to these items. Furthermore, there was the testimony of the government auditor that in his examination for the year 1944, he took into account the delinquency and renewal factors.

A witness for taxpayer testified that bad debt losses suffered by small loan companies in 1942, 1943 and 1944 averaged 1.6% of their accounts and notes receivable. In 1942 taxpayer's reserve was 3.079%, in 1943, 3.633% and in 1944, 3.734% of its accounts and notes receivable. Furthermore, taxpayer's accumulated reserve rose from $6,502.01 at the end of 1941 to $18,349.02 at the end of 1944. It may be noted that during the period when taxpayer's bad debt reserve almost tripled, its account and notes receivable remained at a stationary level or decreased slightly.

■ Taxpayer does not claim that the reserve for bad debts as determined by the Commissioner was, in fact, not sufficient to cover the actual charge offs for the year ending March 31, 1944, or for the two previous years. Taxpayer, in

**570**

effect, argues that the function of a reserve for bad debts is to protect it against excessive losses in future depression years. From a viewpoint of sound business management it may be wise to accumulate surplus funds against future contingencies but such is not the type of reserve contemplated by § 23(k) (1), and is not allowable as a deduction for bad debt reserve.

The taxpayer has not sustained its "heavy burden"[2] of showing that the Commissioner has abused his discretion. Substantial evidence supports the District Court's findings and conclusions and, under the evidence in this case, we cannot say that they are clearly erroneous. We think the District Court correctly decided the issues.

Judgment affirmed.

2. Maverick-Clarke Litho Co. v. Commissioner, 5 Cir., 180 F.2d 587, 594, where the court said "The burden was on petitioner to show that the Commissioner abused his discretion and its proof falls far short of meeting that heavy burden."