**AMERICAN STATE BANK, a Wisconsin banking corporation, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee (two cases).**

**Nos. 12876, 12877.**

United States Court of Appeals Seventh Circuit.

June 13, 1960.

Harvey W. Peters, Milwaukee, Wis., for appellant.

Charles K. Rice, Asst. Atty. Gen., Grant Wiprud, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., Milwaukee, Wis., Lee A. Jackson, Robert N. Anderson, John J. Pajak, Attys., Dept. of Justice, Washington, D. C., Francis L. McElligott, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and PLATT, District Judge.

PLATT, District Judge.

Plaintiff, American State Bank, a Wisconsin banking corporation, has appealed from the decision of the district court dismissing its two suits to obtain refunds for corporate income taxes. In one action plaintiff attempted to recover an alleged overpayment of corporate income tax in the amount of $6,320.54 for the year 1953, and in the other action $41,955.52 and $30,193.21 for the years 1954 and 1955 respectively. The overpayments were alleged to be due plaintiff for the reason that the Commissioner of Internal Revenue refused to allow the full amount claimed as addition to its bad debt reserve account for these taxable years. The two cases were consolidated for trial.

Plaintiff contends in substance:

(1) The district court's findings of fact were not supported by the evidence and were clearly erroneous; and

(2) The district court erred in concluding the Commissioner allowed a reasonable amount for the reserve account, because "of the Commissioner's slavish adherence to a formula with complete disregard of the facts and circumstances, and * * * of the statutory command that the additions be 'reasonable'."

The Internal Revenue Code of 1939 provided:

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
* * *

"(k) Bad Debts.

"(1) General rule. Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; * * *."
26 U.S.C.A. § 23.

and the Internal Revenue Code of 1954 provided:

"§ 166. Bad Debts.

"(a) General rule.—

"(1) Wholly worthless debt.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.
*   *   *   *   *   *

"(c) Reserve for bad debts.—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts." 26 U.S.C.A. § 166.

The measure of such reserve and the amounts to be allowed as deductions for 1953 is set forth in Mimeograph 6209, 1947–2 Cum.Bull. 26 as follows:

"* * * 2. In determining a reasonable annual addition to a reserve for bad debts by a bank it is believed to be fair and sufficiently accurate to resort to the average annual bad-debt loss of the bank over a period of 20 years, to include the taxable year, as constituting a representative period in the bank's history and to accept the equivalent percentage of presently outstanding loans as indicative of the probable annual accruing loss. * * *
*   *   *   *   *   *

"5. A newly organized bank or a bank without sufficient years' experience for computing an average as provided for above will be permitted to set up a reserve commensurate with the average experience of other similar banks with respect to the same type of loans, preferably in the same locality, subject to adjustment after a period of years when the bank's own experience is established.

"6. Bad debt losses sustained are to be charged to the reserve, and recoveries made of specific debts which have been previously charged against the reserve by a bank on the reserve method of treating bad debts should be credited to the reserve.
* * * "

Mimeograph 6209 was supplemented in 1954 by Revenue Ruling 54–148, 1954–1 Cum.Bull. 60:

"* * * Section 2. Background.

"The Service has carefully reexamined the provisions of Mimeograph 6209, *supra,* in the light of experience developed thereunder and, as a result of such reexamination, has approved an alternative method for the use of banks in computing the annual addition to the reserve for bad debts. * * *

* * * * * *

"Section 4. Alternative Method.

".01 In lieu of the moving average experience factor provided in paragraph 3 of Mimeograph 6209, which is determined on a basis of 20 years including the taxable year, a bank may use an average experience factor based on any 20 consecutive years of its own experience after the year 1927. Such average experience factor representing the percentage of bad debt losses to loans for the period selected, applied to loans outstanding at the close of the taxable year, determines the maximum permissible addition to the reserve for the year.

* * * * * *

".03 Consistent with the provisions of Mimeograph 6209 which permit newly organized banks and banks without sufficient years' experience of their own to set up a reserve commensurate with the average experience of other similar banks with respect to the same type of loans, preferably in the same locality, banks which select a 20-year period under (.01) above which extends back into years for which they have no experience of their own will be permitted to fill in such years with similar comparable data. * * *"

The above rule was further clarified in 1957 by Revenue Ruling 57–350, 1957–2 Cum.Bull. 144, the pertinent part being:

"For that portion of the 20-year period selected during which the bank was in existence, it is required to use its own experience. For that portion of the 20-year period selected during which the bank was not in existence, section 4.03 of Revenue Ruling 54–148, *supra,* permits a bank to fill in such years with the bad debt experience of other similar banks with respect the same type of loans, preferably in the same locality. * * *"

The plaintiff Bank was organized in 1931 and with the consent of the Commissioner in 1945 changed from a specific bad debt deduction to a reserve account for bad debts in computing income tax. In 1947 the plaintiff Bank moved to a downtown location in Milwaukee.

The real controversy arises because the Commissioner disallowed deductions from income tax to the extent that these deductions for the reserve account for bad debts were based upon substituted loss ratio for the years the Bank was in actual existence. The plaintiff Bank in its return for 1953 determined its average loss ratio for the twenty year period ending with its taxable year, by substituting the bad debt average percentage to total losses of member banks of the Seventh Federal Reserve District, of which it was a member, for the years 1934, 1935, and 1936 instead of its own percentages which were smaller. For the years 1954 and 1955 the plaintiff Bank used its average loss ratio for determining additions to its reserve account for bad debts the twenty year period from 1928 through 1947 except it substituted the Seventh Federal Reserve District Banks' average loss ratio for the years 1928 through 1936.

The parties stipulated a large portion of the facts which will not be repeated here since these facts are stated in the opinion of the district court 176 F.Supp. 64, 69. The district court also heard testimony and made the following findings of fact:

(1) "The evidence does not show that the Bank's loss experience has

been or will be materially altered as a result of its move to a downtown location. * * *

(2) "The loss experience of two comparable downtown Milwaukee banks * * * does not support a finding that plaintiff Bank has a reasonable expectation of substantially increased bad debt losses."

(3) The evidence did not show "that the borrowed experience [of the Seventh Federal Reserve District Banks] has any relevancy to the Bank's business circumstances, the nature of its outstanding loans, its loan policy, or anticipated future losses, except to the extent that the Bank is a member of that District. * * *

(4) " * * * The [evidence] here does not support a finding of present or anticipated future losses which establish the insufficiency of the allowed additions to reserves or the inadequacy of the accumulated reserve * * *."

The district court concluded "[t]he [plaintiff] Bank has not met its heavy burden of showing that the Commissioner's determinations in question here are unreasonable or arbitrary."

A review of the stipulated facts discloses that plaintiff Bank moved to its downtown location in 1947. The average percentage of losses to total loans was greater for the sixteen year period from 1932 through 1947 than it was during the six year period from 1948 through 1953 after it moved; (This supports the district court's first finding of fact.) that the loss experience of the two comparable downtown Milwaukee banks showed a greater loss percentage than those of the plaintiff Bank for the 1930's and for some years of the early 1940's; that the two comparable downtown banks had a difference in average loss ratio themselves for the period of 1938 through 1947. One of these banks had an average loss ratio for years 1940 through 1947 which evidently indicated that there was an excess of bad debt collections over bad

debts charged off, in other words there was an average gain ratio instead of an average loss ratio; that one of the comparable downtown banks, which was organized in 1929 used the Seventh Federal Reserve District loss ratio for the years 1928 and 1929, and its own loss ratio for the years that it was in existence. The other comparable bank was in existence in 1928 and used its actual loss ratio of bad debts to loans as its loss ratio during these years. One of these banks sustained heavy losses shortly after its organization in 1929; (The foregoing facts support the district court's second finding of fact.) that the plaintiff Bank had a lower percentage loss ratio on bad debts during the 1930's than the Seventh Federal Reserve District Banks except for the years 1937, 1938, and 1939. That from 1940 through 1953 plaintiff Bank had an average loss ratio of .0745 and the Seventh Federal Reserve District Banks had a loss ratio of .0577. (The foregoing supports the district court's third finding of fact.)

The President of the plaintiff Bank testified that he expected losses conforming to the loss experience of the other banks in the Seventh Federal Reserve District if conditions of the depression were again repeated; that in the years 1953 through 1955 it was predominantly a commercial bank making commercial loans from one to five years duration; that the plaintiff Bank was less liberal in its loan policy in 1938 and 1939 than in 1953 through 1955 when the economic conditions were better; that after moving downtown in 1947 the Bank's commercial loan volume increased considerably; that these loans were made in larger amounts to bigger business entities than before; that he believed the large loans did increase the risk but not the percentage of loss; that he could not remember any recession during the period the Bank was in existence when its reserve for bad debts was not sufficient to cover the bad debt losses, and this included the "recession" of 1958. The stipulated facts disclose that plaintiff's reserve for bad debts has increased from

$53,754.78 on January 1, 1953, to approximately $89,350 on January 1, 1956, over $35,000 and in the same period the uninsured loans outstanding increased from approximately eleven and one-half million to fourteen and one-half million dollars. This demonstrates that the ratio of the reserve for bad debts to total loans increased substantially. (The testimony and stipulated facts support the fourth finding of fact of the district court.)

■ There were other stipulated facts and additional testimony of the President of the plaintiff Bank than are set forth above. We realize that this court is in the same position as the district court to make findings of fact based upon stipulated evidence. Some courts have held under such a state of proof that the appellate court is free from rule 52(a), Fed.Rules Civ.Proc., 28 U.S.C.; Chicago, Burlington & Quincy R. Co. v. United States, 7 Cir., 1955, 221 F.2d 811; Gudgel v. C. I. R., 6 Cir., 1959, 273 F.2d 206. Other appellate courts have held to the contrary. C. I. R. v. Consolidated Premium Iron Ores, Limited, 6 Cir., 1959, 265 F.2d 320; Texas Company v. R. O'Brien & Co., 1 Cir., 1957, 242 F.2d 526. It has also been held that where conflicting reasonable inferences may be fairly drawn from undisputed facts weight must be given to the findings of the trial court, as well as where such findings are given weight by the credibility of the witness. United States v. United States Gypsum Co., 1948, 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746; Central Ry. Signal Co. v. Longden, 7 Cir., 1952, 194 F.2d 310. Since we agree with the district court's findings of fact and these findings are not clearly erroneous the difference of opinion as to the conclusiveness of findings of fact by the district court have no effect here.

■ The question is then presented whether the district court misapplied the law in determining that the Commissioner's rulings in disallowing the additional deductions to the reserve account were unreasonable or arbitrary. In utilizing the reserve method for the purpose of bad debt deductions under § 23(k)(1), (I.R.C., 1939), or § 166(c), (I.R.C., 1954), 26 U.S.C., a taxpayer subjects himself to the reasonable discretion of the Commissioner. Union National Bank and Trust Co. of Elgin, 1956, 26 T.C. 537; First National Bank of LaFeria, 1955, 24 T.C. 429, affirmed 5 Cir., 1956, 234 F.2d 868. If the Commissioner's determination as to amount of addition is reasonable there is no abuse of discretion. S. W. Coe & Co. v. Dallman, 7 Cir., 1954, 216 F.2d 566. Defendant relies heavily on this case where at page 569 the court in referring to the Commissioner stated:

"[S]lavish adherence to a formula might, under certain conditions, result in an unreasonable addition to a bad debt reserve, or a failure to make any addition * * *."

The plaintiff Bank omits to take into consideration the further remarks of this court when it stated:

"The District Court approved the additions determined by the Commissioner not because the Commissioner reached the result by use of the formula, but only because the additions were reasonable and adequate under the evidence."

From the district court's opinion here it is clear that the Commissioner's determination of reductions of the claimed addition to the reserve account for bad debts was held to be "reasonable and adequate under the evidence" and not "because the Commissioner reached the result by the use of a formula." The Bank was permitted to use reasonable discretion in resolving what debts became worthless during the taxable year, but it was necessary that the Commissioner use a mathematical formula under the facts to ascertain the amount to be added each year to the reserve account. Paramount Liquor Co. v. Commissioner of Int. Rev., 8 Cir., 1957, 242 F.2d 249. The fallacy of the Bank's position in this case is that it attempted to set up a contingency reserve account for possible future losses and not a reasonable allowable deduction for bad debt reserve for income tax purposes as provided by §§

23(k) (1), 166(a), 26 U.S.C.; S. W. Coe & Co. v. Dallman, supra. The district court properly concluded that where the Commissioner had allowed an addition to the bad debt reserve of the taxpayer, the latter has a heavy burden to show the Commissioner's abuse of discretion. Paramount Liquor Co. v. Commissioner of Int. Rev., supra; S. W. Coe & Co. v. Dallman, supra; Maverick-Clarke Litho Co. v. C. I. R., 5 Cir., 1950, 180 F.2d 587; Morris Plan Ind. Bank v. Commissioner of Int. Rev., 2 Cir., 1945, 151 F.2d 976. The plaintiff Bank did not meet its heavy burden of proving that the Commissioner acted arbitrarily and unreasonably when he disallowed the full amount of its deductions for its reserve account for bad debts.

The order of the district court dismissing plaintiff's two suits is

Affirmed.