**FIRST TRUST AND SAVINGS BANK OF DAVENPORT, IOWA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 3–746–D.

United States District Court
S. D. Iowa,
Davenport Division.

Feb. 19, 1969.

R. Richard Bittner and Ronald L. Saylor, Davenport, Iowa, for plaintiff.

Allen L. Donielson, U. S. Atty., Claude H. Freeman, Asst. U. S. Atty., Des Moines. Stanley Greenblatt, Mitchell Rogovin, Donald R. Anderson, Stephen J. Csontos, Attys., Dept. of Justice, Washington, D. C., for defendant.

### MEMORANDUM AND ORDER

STEPHENSON, Chief Judge.

This is an action for the refund of income taxes and interest with respect to an alleged overpayment of Federal Income Taxes for the taxable years ending December 31, 1962 and 1963. The jurisdiction of the Court pursuant to 28 U.S.C. § 1346(a) (1) is established. All facts have been stipulated and are found accordingly.

The plaintiff is a banking corporation authorized to operate within the State of Iowa with its principal place of business at Davenport, Scott County, Iowa. It files its tax returns on the cash basis of accounting and has elected to utilize the reserve method of accounting for loan losses which is set forth in Section 166 (c) of the Internal Revenue Code of 1954.

The plaintiff arranges financing with its customers when said customers deter-

mine to build a home. After the customer's credit is approved, he executes a first mortgage and a mortgage note. Upon placing such mortgage on record and determining that it has the first lien on the property, the plaintiff credits a separate account in the customer's name with the amount of the loan. There is no escrow agreement and no written agreement of any kind, except the note and mortgage. The note requires a payment of both principal and interest at the end of a six-month period. If construction is not completed at the end of said period, the bank usually will allow the customer to pay the interest due and will extend and renew the note for periods of three to six months.

After the funds are credited to the customer's account, the customer communicates with a representative of plaintiff to request disbursements. Disbursements are made either to the borrower, to a creditor of the borrower, or jointly to the borrower and his creditor. The plaintiff charges a one percent service charge on the total principal amount so long as any funds are in said account. During the years in question, the plaintiff charged an average rate of six percent interest per annum on funds that were disbursed from these accounts. No interest is ever charged on funds credited to a customer's account until funds are disbursed from said account, except for the one percent service charge. As a result of these financing arrangements the plaintiff increased its deductions for additions to reserve for loan losses in the amount of $5,344.09 for the year ending December 31, 1962 and in the amount of $1,990.95 for the year ending December 31, 1963. These deductions were disallowed by the Internal Revenue Service.

These loans had previously been included in an account which included all escrow items such as excise and payroll taxes collected. The above described construction loans are included in the account entitled "Mortgage Loans Special" on plaintiff's 1962 tax return and in the account entitled "Construction Loans" in the plaintiff's 1963 tax return.

Plaintiff timely filed its corporate income tax returns (Forms 1120) for the calendar years 1962 and 1963 with the District Director of Internal Revenue at Des Moines, Iowa. The 1962 return reported a total tax due of $92,800.41, estimated tax paid of $7,777.98, investment credit of $1,384.57, resulting in a balance due of $83,637.86 which was paid in two equal installments. The 1963 tax return reported a total tax due of $119,847.23, estimated tax paid of $19,125.83, resulting in a balance due of $100,721.40, which was paid in two equal installments.

Upon examination of these returns, the Internal Revenue Service proposed deficiencies in the amount of $3,976.06 for the year ending December 31, 1962, and $2,859.15 for the year ending December 31, 1963. A portion of these deficiencies was the result of the disallowance by the Internal Revenue Service of the above mentioned deductions for additions to reserve for loan losses, the issue in question herein. After paying the deficiency assessments on October 27, 1966 and on October 31, 1966, the plaintiff filed a claim for refund which was denied on April 14, 1967. This action was commenced on July 14, 1967, and the plaintiff alleges that as a result of the disallowance of the additions to the reserve for loan losses with respect to the construction loans approved and set aside by plaintiff, but not yet fully disbursed to the customer, it is entitled to a refund in the amount of $2,773.72 for the year ending December 31, 1962, and a refund of $1,035.30 for the year ending December 31, 1963.

The stated grounds for the disallowance of the claimed amounts for additions to reserve for loan losses are, first, that the transactions in question do not constitute loans until the funds are actually paid out of the customer's account, and second, that there is no reasonable risk of loss attendant upon these transactions to justify allowance of a reserve for bad debts thereon. It is fundamental that the determination of the Internal Revenue Service respecting income tax matters is presumptively correct, and

the burden is on the taxpayer to show that it is erroneous. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); Northern Natural Gas Co. v. O'Malley, 277 F.2d 128 (8th Cir. 1960). However, the presumption disappears when evidence is introduced to overcome it. The presumption merely calls upon the taxpayer to produce proof to establish his case. Kentucky Trust Co. v. Glenn, 217 F.2d 462 (6th Cir. 1964).

Section 166 of the Internal Revenue Code, 26 U.S.C. § 166, provides in part:

(a) *General Rule.—*

(1) Wholly worthless debts.—There shall be allowed as a deduction any debt which becomes worthless within the taxable years.

     \*    \*    \*    \*    \*    \*

(c) *Reserve for bad debts.—*In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts.

Section 1.166–1(c) of the Treasury Regulations on income tax provides:

*Bona fide debt required.* Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A gift or contribution to capital shall not be considered a debt for purposes of this section. The fact that a bad debt is not due at the time of the deduction shall not of itself prevent its allowance under section 166. 26 C.F.R. § 1.166–1(c).

■ The evidence in this case is sufficient to establish that the transactions in question constitute loans, and as such, debts within the meaning of section 166 of the Internal Revenue Code. A debtor-creditor relationship based upon a valid and enforceable obligation on the part of the borrower to pay a fixed or determinable sum of money is created at the time the loan is credited to the customer's account. The defendant urges that because no money changes hands until the borrower requests a disbursement from the account, and because no interest is charged until the funds are actually disbursed, there is no actual liability on the part of the borrower at the time the loan is made. Gilman v. Commissioner of Internal Revenue, 53 F.2d 47, 80 A.L.R. 209 (8th Cir. 1931). However, the evidence presented by the stipulation indicates that once the plaintiff credits the special account in a customer's name, the funds are immediately available for disbursement on the order of the borrower, and the plaintiff exercises no control over said funds, other than to retain physical possession thereof within the confines of the bank. In addition, once the credit is entered, there arises an enforceable obligation on the part of the customer to repay the entire amount of the loan. This may be done by withdrawing all of the funds and subsequently repaying in cash, or by obtaining a reversing entry to the credit of the bank once the actual cost of construction is determined, if found to be less than the full amount of the loan. The fact that no interest is charged on funds credited to such an account, except for a one percent service charge, until the funds are disbursed is not determinative.

The Government next contends that because of the lack of any history of loss with respect to the loans in question, such loans should not be included in the plaintiff's loan base in computing its allowable reserve for bad debts. The plaintiff contends that this position is arbitrary and unreasonable.

Mimeograph 6209, 1947–2 Cum.Bull. 26, authorizes a special method for the computation by banks of the annual addition to bad debt reserves. Mimeograph 6209 provides for the computation of an average experience factor for determining the ratio of losses to loans on the basis of twenty years of experience, including the taxable year and the maximum amount of the reserve account is three times the average loss factor. Revenue Ruling 54–148, 1954–1 Cum.Bull. 60, modified Mimeograph 6209 by au-

thorizing banks to utilize any 20 years experience after 1927. The plaintiff utilizes a base period of 1929 to 1948, and its average experience ratio of losses to loans is .9875.

It has been repeatedly held that Mimeograph 6209 represents the exercise of the discretion vested in the Commissioner by Section 166(c) of the Internal Revenue Code. As applied to banks, computation of allowable reserves for bad debts in accordance with the provisions of Mimeograph 6209 are presumed reasonable, and the Government has the burden of proving otherwise. North Carolina Nat'l Bank v. United States, 345 F.2d 544, 170 Ct.Cl. 765 (1965); Union Nat'l Bank of Youngstown v. United States, 237 F.Supp. 753 (N.D.Ohio 1965); Pullman Trust & Sav. Bank v. United States, 235 F.Supp. 317 (N.D.Ill.1963), aff'd per curiam, 338 F.2d 666 (7th Cir. 1964). In order to disallow a deduction for an addition to a reserve for bad debts computed in accordance with Mimeograph 6209, the Government must show unusual or extraordinary circumstances making the use thereof improper in a particular case. North Carolina Nat'l Bank v. United States, *supra*. It is undisputed that if the transactions in question are properly includable in the loan base the plaintiff's computations were properly made in accordance with Mimeograph 6209.

Plaintiff has never suffered a loss in connection with the construction loans in question. The Government contends that this absence of a history of loss constitutes unusual or extraordinary circumstances such as would justify the disallowance of the claimed deduction. Clearly these loans are not Government insured loans, and are thus not of the type which must be excluded from the loan base by the terms of Mimeograph 6209. Included within the category of Government insured loans are Title I F.H.A. loans, Title II F.H.A. loans, and certificates of interest issued by the Commodity Credit Corporation. See Rev. Rul. 57–210, 1957–1 Cum.Bull. 94; Rev. Rul. 57–509, 1957–2 Cum.Bull. 145; Rev.

Rul. 58–259, 1958–1 Cum.Bull. 116. Government insured loans are excluded from the loan base used to compute the allowable reserve for bad debts because the Government guarantees the payment thereof, and there is consequently no risk of any loss. There is no such guarantee of payment in respect to the loans here in question. The fact that there have been in the past no losses in respect to these loans does not justify the conclusion that there is no reasonable risk of loss, or that such losses may not be reasonably anticipated to occur in the future in the ordinary course of the taxpayer's business.

The Court therefore finds that the Government erroneously disallowed the deductions from income claimed by the plaintiff for additions to bad debt reserve for the years 1962 and 1963.

The foregoing shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) Federal Rules of Civil Procedure. Judgment will accordingly be entered for plaintiff. Plaintiff will submit an appropriate order for judgment.